**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

LEON SIPES

    Plaintiff,

v.                                                           Case No. 04-CV-72056

UNUM LIFE INSURANCE COMPANY
OF AMERICA,

    Defendant.
_____/

**OPINION AND ORDER GRANTING PLAINTIFF'S
"MOTION TO DETERMINE ELIGIBILITY"**

Pending before the court is Plaintiff Leon Sipes's "Motion to Determine Eligibility." Defendant Unum Life Insurance Company of America ("Unum") has responded and Plaintiff filed a reply brief. The matter is thus fully briefed and the court concludes that a hearing is not necessary. *See* E.D. Mich. LR 7.1(e)(2). The court will, for the reasons stated below, grant Plaintiffs' motion.

**I. BACKGROUND**

Plaintiff, who is seeking benefits from Defendant's disability insurance program, brings his claims under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq.* On April 8, 2005, the parties stipulated to stay this litigation so that Plaintiff could seek reassessment under a nationwide settlement between Defendant and various state attorneys general who investigated Defendant's allegedly illegal claims handling processes. The reassessment resulted again in Defendant's

denial of Plaintiff's claim for benefits. Accordingly, the parties agreed to reactivate the case in this court so that Plaintiff could challenge that determination.

Plaintiff worked as a consultant for the Thomas Group, Inc., US from July 1, 1990 until March 15, 2000. (Administrative Record ("AR") at 40, 268).[1] Thomas Group, Inc., Europe rehired him on January 1, 2001 and he was transferred to the payroll of Thomas Group, Inc., US on July 1, 2001. (AR at 268.) Plaintiff claimed the onset of severed cervical pain on Friday, May 17, 2002, while he was working on a project in Germany. (*Id.* at 34.) Plaintiff has a history of neck surgery and he asserts that he could not expeditiously locate an English speaking doctor or, for that matter, "a well trained specialist." (Pl.'s Br. at 2.) He spent the weekend in considerable pain on his sofa, unable to lie down, and relying on medication and a pain salve that he obtained at a pharmacy. (*Id.*; AR at 06, 34.) He returned to work on Monday, May 20, 2002 and continued to report while completing an important project through his return to Michigan on July 15, 2002. (AR at 4, 34.)[2]

---

[1] The court, like the parties, cites to the bate-stamped page numbers of the administrative record. For purposes of determining eligibility, the court finds that the administrative record is adequate. The court need not detail instances where Plaintiff highlights that he had no opportunity to respond or to augment the administrative record. The court acknowledges Plaintiff's position and finds no immediate need to remedy the process below. Plaintiff agrees that "[a]t this point, the Court should decide the eligibility issue without sending the matter back to Defendant." (Pl.'s Br. at 11.)

[2] Plaintiff claims that he stopped working by July 15, 2002, when he merely flew home. Defendant argues that Plaintiff's last day worked was July 15, 2002. Defendant's characterization finds support in an unidentified document in the administrative record, (AR at 4), as does that of Plaintiff, (*id.* at 125). Plaintiff's claim form indicates that his "date first unable to work" was July 15, 2002. (*Id.*) As such, Plaintiff's claim for disability originated on July 15, 2002.

2

Upon his return to America, Plaintiff was furloughed, effective July 16, 2002. (*Id.* at 268.) According to a human resources manager, the reason for the furlough was "no current assignment available for [Plaintiff]." (*Id.*) The notice of unpaid furlough stated that "Thomas Group will maintain your employee benefits and other privileges as follows." (7/12/02 Memorandum, Pl.'s Ex. B & Def.'s Ex. 3.) The ensuing list did not include Thomas Group's disability plan. (*Id.*) Thomas Group terminated Plaintiff's employment on January 27, 2003. (AR at 268.)

Plaintiff first sought medical treatment on August 8, 2002, at which point Plaintiff was initially subject to medical restrictions. (*Id.* at 8, 127.) Plaintiff's attorney sent a claim letter under the disability plan on July 10, 2003 and Plaintiff completed a claim form on August 3, 2003, about fifteen months after the onset of his injury. (*Id.* at 54-55, 125.) Defendant initially denied the claim because Plaintiff's employer did not complete and sign its portion of the relevant paperwork. (*Id.* at 88, 221-24.)

Plaintiff appealed and Defendant affirmed its decision based upon a different rationale. (*Id.* at 271.)[3] Defendant stated in an April 8, 2004 letter that it was unable to reverse its decision because (1) Plaintiff, as an employee on unpaid furlough, was no longer eligible for long term disability insurance and (2) Plaintiff's receipt of unemployment benefits from the State of Michigan necessarily meant that Plaintiff presented himself as able to work. (*Id.* at 271-72.) Plaintiff was advised that he could bring a civil suit under ERISA, which he filed in state court on April 29, 2004 and which Defendant later removed to this court.

---

[3]Defendant obtained the paperwork directly from Thomas Group. (AR at 271.)

As noted above, the parties stayed the action and Plaintiff sought reassessment of his claim according to Defendant's nationwide settlement with various state attorneys general. The parties briefed eligibility (though Plaintiff claims that certain information was not timely disclosed with an opportunity to respond) and the reassessment consultant upheld the denial of benefits on August 13, 2007. (Reassessment Decision, Def.'s Ex. 2.) The consultant reviewed the coverage policy language and concluded that:

> (1) Plaintiff was not under a physician's care from May 17, 2002 to August 8, 2002,
>
> (2) He did not satisfy the requirements of total disability because he continued to perform the material duties of his occupation from May 17, 2002 until July 15, 2002,
>
> (3) He did not satisfy the requirements of partial disability because he did not suffer a loss of earnings of at least 20% from May 17, 2002 to July 15, 2002,
>
> (4) Medical reviews did not find restrictions and limitations that preclude him from performing the duties of his occupation and
>
> (5) He was placed on unpaid furlough without the continuation of long term disability coverage.

(*Id.*) The court's review will focus upon this most recent denial of benefits.

## II. STANDARD

The parties argue for application of two different standards of review. Typically, where a contract of insurance grants discretionary authority, as is the case here, (AR at 198), the applicable standard of review for a claim for benefits under ERISA is the "arbitrary and capricious" standard. *Baker v. United Mine Workers*, 929 F.2d 1140, 1144 (6th Cir. 1991). This standard asks whether the plan administrator's decision was

4

"grounded in and supported by rational evidence supporting the benefit determination." *Id.* Substantial evidence must support the decision. *Id.* This standard is deferential, requiring that the court uphold the decision if the court can find a rational explanation for it, regardless of whether the court as a matter of first instance would agree with the rationale. *See, e.g.*, *Smith v. Ameritech*, 129 F.3d 857, 863 (6th Cir. 1997); *Abbott v. Pipefitters Local Union No. 522*, 96 F.3d 236, 240 (6th Cir. 1996).

Plaintiff argues that in this case Defendant has a history of misconduct (citing examples from other federal litigation) and is operating under a conflict of interest because it both administers and funds the disability plan. Plaintiff argues that *de novo* review is therefore appropriate, relying upon case law from other circuits. Plaintiff fails, however, to cite binding Sixth Circuit precedent that would direct this court to apply a heightened standard of review. There is, in fact, authority to the contrary in which the Sixth Circuit has held that a conflict of interest does not require the court to abandon the arbitrary and capricious standard of review. *See Borda v. Hardy, Lewis, Pollard & Page*, 138 F.3d 1062, 1069 (6th Cir. 1998); *Univ. Hosp. of Cleveland v. Emerson Elec. Co.*, 202 F.3d 839, 846 (6th Cir. 2000).

Under the circumstances, the court is not persuaded that a different standard of review should apply. The United States Supreme Court held that an ERISA plan that grants discretionary authority to the plan administrator means that the decisions of the administrator construing the terms of the plan are subject to arbitrary and capricious review. *Firestone Tire and Rubber Co. v. Bruch*, 489 U.S. 101, 109 (1989). There is no dispute that in this case the administrator had such discretionary authority to construe the terms of the plan, and the court therefore must apply this deferential standard.

5

## III.  DISCUSSION

Defendant's August 14, 2007 decision letter sets out several relevant policy provisions upon which it relied in its determination that Plaintiff is not eligible. The court will review the relevant policy language, mindful of the applicable standard of review. According to the policy, "classes eligible for insurance are shown in the policy specifications." (AR at 204.) The specifications require active employment of at least 30 hours per week. (*Id.* at 196.)

> "Active employment" means the employee must be working:
>
> 1.  for the employer on a full-time basis and paid regular earnings (temporary or seasonal employees are excluded);
>
> 2.  at least the minimum number of hours shown in the policy specifications; and either
>
> 3.  at the employer's usual place of business; or
>
> 4.  at a location to which the employer's business requires the employee to travel.

(*Id.* 200.) Because Plaintiff's furlough went into effect on July 16, 2002, he was an active employee under the meaning of the policy until the end of July 15, 2002. Further, the specifications provide that employees on a "Temporary Layoff or Leave of Absence" have a "Continuation" of coverage "[t]o the end of the policy month following the policy month in which the layoff or leave of absence begins." (*Id.* at 198.) Because the memorandum informing Plaintiff of his furlough references "an initial period of 90 Days," (7/12/02 Memorandum, Def.'s Ex. 3), Plaintiff's employment situation fell within the plain

6

meaning of temporary layoff.[4]  Further, Plaintiff's policy was paid on a monthly basis on the first day of the month.  (AR at 194, 199.)  There is nothing in the record which suggests that Defendant did not receive its regular payment for Plaintiff's July 2002 coverage on July 1, 2002.  As such, his continuation of coverage while furloughed would extend to the end of August 2002.

The policy provides that coverage is terminated upon the "[c]essation of active employment," and Defendant relied in part upon this language when it found that Plaintiff was ineligible.  (*Id.* at 212.)  The quoted language appears in the context of some exceptions, however, which state that the employer "may continue the employee's insurance by paying the required premiums," subject to the continuation time described above in the policy specifications for temporarily laid-off employees.  (*Id.*)  Again, in the absence of evidence showing that Defendant did not receive the July 2002 premium, the court cannot conclude that there was no continuation of coverage through the end of August 2002.  The plain provisions of the policy indicate that Defendant was to be paid on the first of every month.  (*Id.* at 194.)  Defendant therefore had no reasoned basis to presume otherwise and fault Plaintiff for "provid[ing] no evidence that premiums were paid to continue the insurance."  (Reassessment Decision at 5, Def.'s Ex. 2.)  The evidence appears near the top of the first page of the applicable policy, where "Premium Due Dates" are identified as "the first day of each following month."  (AR at 194.)  Under the circumstances, the only reasoned inference is that Defendant was to receive its

---

[4]There is thus no basis for Defendant's conclusion that it is "unclear if a furlough qualifies as a layoff or leave of absence." (Reassessment Decision at 5, Def.'s Ex. 2.) As defined by Defendant in its July 12, 2007 memorandum, the furlough is manifestly a temporary layoff.

premium on July 1, 2002. Because the relevant policy language is unambiguous and not reasonably susceptible to Defendant's interpretation and application, the court concludes that Defendant's determination of ineligibility was arbitrary and capricious. Reasonable minds cannot disagree that Plaintiff falls within the class of eligible disability claimants.

Defendant went beyond eligibility and decided that the record did not support Plaintiff's claim of disability. The court will not reach this issue at this juncture, as the court called for counsel to brief "the threshold issue of eligibility." (1/8/08 Order.) Having decided that issue, the court will schedule a conference to discuss how the merits of the case should be presented, including whether remand is advisable.

## IV. CONCLUSION

IT IS ORDERED that Plaintiff's "Motion to Determine Eligibility" [Dkt. # 21] is GRANTED.

IT IS FURTHER ORDERED that counsel appear at a conference on **April 28, 2008 at 2:30 p.m.** to discuss further proceedings.

       S/Robert H. Cleland  
ROBERT H. CLELAND  
UNITED STATES DISTRICT JUDGE

Dated: April 9, 2008

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, April 9, 2008, by electronic and/or ordinary mail.

       S/Lisa Wagner  
Case Manager and Deputy Clerk  
(313) 234-5522